## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### December, 1917.

## THE PEOPLE v. WILLIAM C. HAGER.

(181 App. Div. 153.)

ABORTION *— VIOLATION OF PENAL LAW, SECTION 1142, IN REPRESENTING THAT DRUG OR MEDICINE CAN BE USED TO PROCURE ABORTION — EVIDENCE.

Upon the prosecution of a defendant, a physician, for the violation of section 1142 of the Penal Law, the witnesses for the People were detectives, members of the police force, who acted as decoys. It appeared that the defendant gave a prescription to one of the witnesses and furnished her some pills, but the prescription was nothing more than a formula for nausea, and there was no proof that the pills in the dose recommended would be an abortifacient or that they purported to be "for causing unlawful abortion." Evidence examined, and *held*, insufficient to convict the defendant of selling or giving away a drug or medicine for causing unlawful abortion or purporting to be for causing unlawful abortion, but sufficient to justify a finding of his guilt in holding out representations that the drug or medicine "can be so used or applied, or any such description as will be calculated to lead another to so use or apply," etc.

The gravamen of the provision of the statute prohibiting the holding out of representation that a drug or medicine can be used to procure an abortion is not the character of the drug nor the purpose of him who proffers it, but the representation made.

(BACKMAR and STAPLETON, JJ., dissented, with opinion.)

APPEAL by the defendant, William C. Hagar, from a judgment of the Court of Special Sessions of the City of New York, county of Kings, rendered against him on the 4th day of August, 1916, convicting him of the crime of selling a drug in violation of section 1142 of the Penal Law.

*Frederick N. Van Zandt,* for the appellant.

* See Note Vol. 22, p. 177.

*Harry G. Anderson, Assistant District Attorney (Harry E. Lewis, District Attorney, with him on the brief), for the respondent.*

JENKS, P. J.:

The defendant, a physician, was convicted of a violation of section 1142 of the Penal Law. Even with disregard of the defendant's proof so far as it is contradictory or contrary to the proof of the People, I think that he could not have been convicted of selling or giving away a drug and medicine for causing unlawful abortion or purporting to be for causing unlawful abortion. He gave a prescription and furnished certain pills. The prescription appears to be nothing more than a formula for nausea. Chemical analysis of the pills detected but one substance in a quantity sufficient for identification, namely, an unstated quantity of aloin, which is an active cathartic, a purgative glucosid, made from aloes. (Cent. Dict.; Dorland's Am. Illus. Dict. of Medicine [8th ed.].) There is no proof that the pills in the dose recommended would be an abortifacient for the woman in the condition represented by her. There is no proof that the pills purported to be " for causing unlawful abortion;" a phrase that means they imported to be for that purpose, as, *e. g.*, by inscription upon the box or bottle that contained them.

But this statute also prohibits holding out representations that the drug or medicine " can be so used or applied, or any such description as will be calculated to lead another to so use or apply," etc. The information, which is to be regarded as an indictment, specifies such doings by the defendant, and was, therefore, sufficient to sustain a conviction upon this part of the said statute. (Bork v. People, 91 N. Y. 5; People v. Corbalis, 86 App. Div. 531, 17 N. Y. Crim. 469.)

The two witnesses for the People were detectives who were decoys. But they were not within the category of private detectives, but were members of the police force assigned to a special squad, and acted presumably in discharge of prescribed official

duties.    There is no dispute that defendant, after he had been told by one of them that the other, who posed as her sister, supposed that she was pregnant, made an appointment for the latter at his office.    There is no dispute that the two women thereafter came to his office, that one of them represented that the absence of her menses caused her to suppose that she was pregnant, that the defendant thereupon took her into his private office apart from her companion, consulted with her upon her supposed condition and thereafter in the presence of both women wrote the said prescription and furnished the said pills.    There is, however, this variance: the two detectives testify that he was asked in effect how long before the menses would be brought on, and he replied, in two or three days, but he insists that this statement was not made, and that his purpose was to secure a relaxation of the bowels preliminary to a proposed examination. Both they and he agree that he told the supposed pregnant woman to return to his office later.    If the detectives are to be credited, the defendant consulted as to a supposed pregnancy indicated by cessation of menses, furnished a drug to the woman with the statement that the drug would bring on the menses. There is plain indication that the pills were of a well-recognized kind, described by a name, containing no prohibited drug, purchasable at any chemist's shop without prescription, and used as a mild cathartic.    But the gravaman of this provision of the statute is not the character of the drug, or the purpose of him who proffers it, but the representation made.    Was the proof sufficient to justify a finding that the defendant held out to the detective that the pills taken in the dose prescribed would restore her menses, after she had represented to him that they had ceased under such conditions as indicated a possible pregnancy? The trial court has determined against the defendant, and I cannot say that the proof did not warrant its conclusion.    The court evidently thought that the offense was not flagrant, inasmuch as it imposed the punishment of a fine.

I advise that the judgment be affirmed.

RICH and PUTNAM, JJ., concurred; BLACKMAR, J., read for reversal, with whom STAPLETON, J., concurred.

BLACKMAR, J. (dissenting):

I dissent. The medicine which the doctor gave was entirely harmless; and it is proposed to uphold the conviction on the ground that he represented that it would produce an abortion. There is no direct evidence of any such representation; it is spelled out of the evidence of the complaint of the woman and the prescription of the physician. Both witnesses for the People were police detectives, engaged in an attempt to decoy the defendant into the commission of a crime — an immoral act in itself, and carried out by falsehood. In some respects their evidence was highly improbable, as where one testified that she heard the conversation through the closed door of the examination room although she did not listen at the door. It is suggested that she might have fabricated a situation which would make her evidence more believable, if she had testified that she did listen at the door; but we must recognize a natural aversion to confess to eavesdropping. Every circumstance tended strongly to show the innocence of the defendant; the fee was two dollars, usual for innocent consultation, although the witnesses testified that she suggested ten dollars and the doctor asked twenty-five; the medicine itself was harmless, and the reputation of the defendant was of the best.

Detective work in obtaining by legal methods evidence of crime is necessary, and the vocation should be held in proper esteem. But it is neither necessary nor honorable to induce the commission of a crime, whether the procurer is paid by the public or by private parties. In both cases the witnesses are under a temptation to make good. In the case of private detectives, the courts consistently refuse to grant divorces without corroborating evidence. The courts established the rule that convictions by accomplices could not be had without other evidence tending to connect the defendant with the com-

mission of the crime, long before it was enacted into a statute. (See Code Crim. Proc., § 399.)   It is the duty of the courts, in reviewing a conviction, not only to determine whether there is some evidence, but whether it is enough to exclude reasonable doubt.   In this case, the evidence is, in my opinion, not sufficient.   A conviction of a professional man of unimpeached character should not be had solely on the testimony of paid detectives who claim to have induced the commission of the crime, when that testimony has elements of improbability and is not supported by a single fact or circumstance which lends it even an air of probability.   Every doctor in the community, no matter how innocent in fact or how high his character, is at the mercy of such an attempt.

STAPLETON, J., concurred.

Judgment of conviction of the Court of Special Sessions affirmed.